Raymond P. Boucher, CA Bar No. 115364
  *ray@boucher.la*
Brian M. Bush, CA Bar No. 294713
  *bush@boucher.la*
**BOUCHER LLP**
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:   (818) 340-5400
Fax:   (818) 340-5401

Richard P. Traulsen – State Bar #016050
  *rtraulsen@bmt-law.com*
**BEGAM, MARKS & TRAULSEN P.A.**
11201 North Tatum Blvd., Suite 110
Phoenix, Arizona 85028-6037
Tel:   (602) 254-6071

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Abigail Ratchford, an individual; Ana Cheri, individual; Eva Pepaj, an individual; Paola Canas, an individual; Tiffany Toth Gray, an individual;<br><br>        Plaintiffs,<br><br>v.<br><br>HI-FI Tucson, LLC d/b/a Hi Fi Kitchen & Cocktails, an Arizona Corporation;<br><br>        Defendant. | Case No.<br><br>**COMPLAINT**<br><br>1. **Misappropriation of Likeness**<br><br>2. **Violation of the Lanham Act, 15 U.S.C. § 1125(a)**<br><br>3. **False Light Invasion of Privacy** |

## INTRODUCTION

1.     Plaintiffs are Abigail Ratchford, Ana Cheri, Eva Pepaj, Paola Canas and Tiffany Toth Gray (collectively herein referred to as "Plaintiffs"). They are professional models, actress, business women, and well-known social media personalities.

2.     Defendant is HI-FI Tucson, LLC d/b/a Hi Fi Kitchen & Cocktails

(hereinafter the "Defendant", "the Club" or "Hi Fi").

3. Defendant pirated and altered the images, likeness and/or identity of each Plaintiff, and posted the same in advertisements or promotions on the Club's websites including its social media platforms, for purely self-serving commercial purposes.

4. Having operated a business in the adult entertainment industry, Defendant was aware, or should have been aware, of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendant's commercial benefit.

5. Despite being well aware of an obligation to do so, Defendant never negotiated for or purchased the right to use any image of any Plaintiff. On the contrary, Defendant circumvented the typical arms-length negotiation process entirely and pirated the images. In doing so, Defendant deprived each Plaintiff of the right to say "no," to protect her image, brand and reputation, and gained a windfall by using and altering the images of professional and successful models for Defendant's own commercial purposes without having to compensate the models a single penny for such usage.

6. Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use or alteration of any image to Defendant for the promotion of the Club, each Plaintiff would have promptly and enthusiastically declined to do so.

7. Defendant's misappropriation of Plaintiffs' likenesses, furthermore, encouraged among the public and Defendant's business invitees and patrons the false perception that each Plaintiff endorsed, supported, participated in or attended the types of events hosted at the Club.

8. Defendant's conduct is misleading and deceptive. Defendant's conduct is injurious to each Plaintiff by falsely and fraudulently representing that each Plaintiff depicted in the misappropriated images is somehow affiliated with Defendant, has

contracted to perform at and/or participate in events at the Club and/or has been hired to promote, advertise, market or endorse the Club, its business and services of being a Nightclub and dance club and other activities offered at the Club. The misappropriations herein alleged also create the false and fraudulent perception that each Plaintiff depicted in the advertisements will attend each event and participate in the activities advertised.

9. By using the Plaintiffs' images without authority or consent as alleged in this Complaint, Defendant has jeopardized each Plaintiff's professional image, brand and marketability.

10. Defendant's conduct has also deprived each Plaintiff the opportunity to engage in arms-length negotiations regarding the terms and conditions of use of their likeness, including the terms of any release, remuneration per image or use, or the ability to decline the business opportunity entirely.

## JURISDICTION AND VENUE

11. Jurisdiction is appropriate in the United States District Court for the District of Arizona based on 28 U.S.C. § 1332 in that all Plaintiffs to this action are citizens of a foreign state, Defendant is a citizen of Arizona, and the amount in controversy exceeds $75,000.

12. Venue is proper in this Court pursuant to ARS § 12-401 because Defendant Hi Fi resides in Pima County.

## PARTIES

**Plaintiffs:**

13. Plaintiff ABIGAIL RATCHFORD ("RATCHFORD") is, and at all times relevant to this action was, an American model, actress and spokesperson. As a model, RATCHFORD has appeared in a number of magazines including, *Zoo, Maxim, Playboy* and *Innocent*. She has been featured in numerous billboard campaigns on Sunset Blvd. RATCHFORD has also appeared on various television programs, including multiple guest roles on ABC, E! and most recently, NBC's

"*Parks and Recreation*". She appears frequently on the show *TMZ* where they have coined her "The Sweetheart". RATCHFORD has been featured as a model for a number of designers including Michael Costello, walking in his Stello Spring Collection show during this year's LA Fashion Week. RATCHFORD has close to 7.5 million followers on Instagram and 4 million on Facebook.

14.     Plaintiff ANA CHERI ("CHERI") is, and all times relevant to this action was, an American model, business woman, spokesperson, *Playboy* Playmate and resident of Westminster, California. As a model, CHERI has focused on fitness and health. She works for Shredz Supplements as a Brand Ambassador/Motivational Speaker and obtained several NPC Bikini titles. CHERI has appeared in *Playboy* and *Muscle and Fitness* Magazine. CHERI has over 11.1 million followers on Instagram, over 6 million followers on Facebook and 211 thousand followers on Twitter.

15.     Plaintiff EVA PEPAJ ("PEPAJ") is, and all times relevant to this action was, a model, spokeswoman and actor. As a model, PEPAJ'S work includes fashion runways, high fashion and print. She was featured in a national Diet Coke TV commercial and was the spokesmodel for national advertisement campaigns for Oil of Olay, Fruit of the Loom, Kohler and Coca Cola. As an actress, she is known for lead roles in the shows "*The Hand Off*", "*Interior*", "*Leather Bar*" and "*The Romp*". PEPAJ also has over 30,000 followers on Instagram.

16.     Plaintiff PAOLA CANAS ("CANAS") is, and at all times relevant to this action was, a Columbian model, actress, spokesperson, host and runway model. As a model, CANAS has appeared in runway shows all over the world including Columbia, Mexico, the United States, Ecuador and France. CANAS has been the face of international brands and labels, such as Soho, Kiss underwear, Salon International, Zona Rosa and Esteban Escobar. She has been featured in the international advertisement campaign for the worldwide lingerie line Curver's, was the face for the Masters Golf Tournament, and the image for the "International Surf and Sport Expo". CANAS has also appeared on numerous television shows on FOX Sports, Telemundo,

and TV Azteca. CANAS has a combined total of more than 355,000 followers on Facebook, Instagram and Twitter.

17. Plaintiff TIFFANY TOTH GRAY ("GRAY") is, and all times relevant to this action was, an American model, host, TV personality, spokesperson, business woman, and *Playboy* Playmate. As a model, GRAY has been a *Playboy* "Playmate of the Month," a *Playboy* "Cyber Girl of the Week" and *Playboy* "Cyber Girl of the Month." She has also been featured in such magazines as *Maxim*, *Super Street Bike*, *Import Tuner*, *Sport Truck*, *Iron Man*, *Muscle and Fitness, Kandy, DSS, Esquire* and *Seventeen*. GRAY has been the face of Rockstar Energy Drinks, Monster Energy Drinks, the Palms Hotel and the Hard Rock Hotel, as well as acted on the TV series "Las Vegas", "Jimmy Fallon", "Get Out", "Daily Habit", "The Anti-Viral Show", and "Tosh.O". GRAY has over 1.1 million Instagram followers and 3.9 million followers on Facebook.

**Defendant:**

18. Based on publicly available records, and further upon information and belief, Defendant HI-FI Tucson, LLC operating and doing business as Hi Fi Kitchen & Cocktails – a Nightclub - is a limited liability corporation organized and existing under the laws of the State of Arizona with its principal place of business located at 345 E Congress Street, Tucson, Arizona 85701.

19. At all relevant times mentioned herein the Club held itself out and has held itself out to be a Nightclub in Tucson, Arizona.

**FACTUAL ALLEGATIONS AS TO ALL CAUSES OF ACTION**

**Defendants Use Website and Social Media Platforms for Marketing:**

20. Upon information and belief, the Club coordinates its advertising, marketing and promotional activities through, among other things, active and dynamic use of its website, among others, and various coordinated social media promotions through its Facebook page and Instagram page ("Social Media Accounts").

21. Defendant's marketing and promotional activities are publicly accessible

through the World Wide Web, various social media outlets and affirmative prospect marketing.

22. Plaintiffs are informed and believe and on such information allege that Defendant further promotes its business by and through the use of marketing strategies including, but not limited to, the following: social media such as Facebook with 22,110 followers and Instagram with 5,505 followers; flyers, commercials, and posters. At all times relevant to this Complaint Defendant had actual and exclusive control over the contents contained within and/or displayed on each of said marketing devices.

23. Upon information and belief, Defendant manages, operates and/or controls a "Facebook page" (accessible via the URL: https://www.facebook.com/hifitucson/) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Club as being a "Music-Centric" Club with "Music & Mayhem While Overlooking the Vibrancy of Downtown Tucson". Defendant at all times relevant to this Complaint exercised actual control over the contents displayed on its Facebook profile through its own personal acts of posting items on the Facebook profile, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook profile.

24. Upon information and belief, Defendant manages, operates and/or controls an "Instagram page" (accessible via the URL: https://www.instagram.com/hifitucson/) through which it promotes, endorses, and markets its business, solicits customers and advertises events for the Club. Said website identifies the Club as being a "Music-Centric Bar With a Full Menu Of Munchies & Ridiculous Adult Milkshakes Served Late Into The Night!". Defendant at all times relevant to this Complaint exercised actual control over the contents displayed on its Instagram profile through its own personal acts of posting items on the Instagram profile, or by expressly permitting and condoning another person(s)' act

6

of posting items on the Instagram profile.

25. Defendant used each Plaintiffs' images and likenesses in advertisements and marketing displays on Defendant's social media accounts to generate additional revenue, increase sales, and promote the patronage of the Club.

**Plaintiffs Are Professional Models and Their Likenesses Are Commercially Valuable:**

26. Each Plaintiff is a professional model who earns a living by promoting her image and likeness to select clients, companies, commercial brands, media, social media and entertainment outlets for the advertisement of products and services, as well as the promotion of their own reputation and brand for modeling, acting, hosting, and other opportunities.

27. Each Plaintiff's career in modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

28. Each Plaintiff commands substantial sums of money for the licensed commercial use of her image.

29. A model's reputation directly impacts the commercial value associated with the use of ones' image, likeness, or identity to promote a product or service and as such, Arizona common law has recognized that the person has the right to control the commercial exploitation of her name, likeness and identity.

30. Each Plaintiff is a professional model in the ordinary course. Each Plaintiff seeks to control the commercial use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

31. In the modeling industry, reputation is critical. Endorsing, promoting, advertising or marketing the "wrong" product, or working in a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies,

products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

32. As set forth below, each Plaintiff's image, likeness and/or identity has been misappropriated and intentionally altered by or at the direction of the Defendant, without Plaintiffs' consent, for use in its online marketing scheme designed to promote the Club.

**The Misappropriated Images:**

33. The Club unlawfully posted and/or displayed the Plaintiffs' images and likenesses eleven times, on its Facebook and Instagram pages, in connection with advertising for Hi Fi.

34. Defendant posted GRAY's image and likeness on the Club's Facebook and Instagram pages on October 27, 2017.

    a. Defendant's use was unauthorized and for a commercial purpose.

    b. GRAY is readily identifiable in the misappropriated images. No reasonable person in Defendant's position would mistakenly believe that Plaintiff was an employee or agent of Hi Fi's or otherwise affiliated with the Club.

    c. Defendant never hired or contracted with GRAY to advertise, promote, market or endorse the Club.

    d. GRAY has never been employed by Defendant or contracted with Defendant to participate in events at the Club.

    e. Defendant never sought permission or authority to use or alter GRAY's image, likeness or identity to advertise, promote, market or endorse the Club.

    f. GRAY never gave permission, or assigned, licensed or otherwise consented to Defendant's use or alteration of her image, likeness or identity to advertise, promote, market or endorse the Club.

    g. Defendant neither offered nor paid any remuneration to GRAY for

the unauthorized use or her image.

  h. Defendant's use and alteration of GRAY's image creates the false perception that GRAY had consented or agreed to promote, advertise, market and/or endorse the Club to the benefit Defendant's commercial interests.

35. Defendant posted CANAS' image and likeness on the Club's Facebook and Instagram pages on November 22, 2017.

  a. Defendant's use was unauthorized and for a commercial purpose.

  b. CANAS is readily identifiable in the misappropriated images. No reasonable person in Defendant's position would mistakenly believe that Plaintiff was an employee or agent of Hi Fi's or otherwise affiliated with the Club.

  c. Defendant never hired or contracted with CANAS to advertise, promote, market or endorse the Club.

  d. CANAS has never been employed by Defendant or contracted with Defendant to participate in events at the Club.

  e. Defendant never sought permission or authority to use or alter CANAS' image, likeness or identity to advertise, promote, market or endorse the Club.

  f. CANAS never gave permission, or assigned, licensed or otherwise consented to Defendant's use or alteration of her image, likeness or identity to advertise, promote, market or endorse the Club.

  g. Defendant neither offered nor paid any remuneration to CANAS for the unauthorized use or her image.

  h. Defendant's use and alteration of CANAS' image creates the false perception that CANAS had consented or agreed to promote, advertise, market and/or endorse the Club to the benefit of Defendant's commercial interests.

9

36. Defendant posted PEPAJ's image and likeness on the Club's Facebook and Instagram pages on March 16, 2018 and on the Club's Facebook on March 17, 2016.

   a. Defendant's use was unauthorized and for a commercial purpose.
   b. PEPAJ is readily identifiable in the misappropriated images. No reasonable person in Defendant's position would mistakenly believe that Plaintiff was an employee or agent of Hi Fi's or otherwise affiliated with the Club.
   c. Defendant never hired or contracted with PEPAJ to advertise, promote, market or endorse the Club.
   d. PEPAJ has never been employed by Defendant or contracted with Defendant to participate in events at the Club.
   e. Defendant never sought permission or authority to use or alter PEPAJ's image, likeness or identity to advertise, promote, market or endorse the Club.
   f. PEPAJ never gave permission, or assigned, licensed or otherwise consented to Defendant's use or alteration of her image, likeness or identity to advertise, promote, market or endorse the Club.
   g. Defendant neither offered nor paid any remuneration to PEPAJ for the unauthorized use or her image.
   h. Defendant's use and alteration of PEPAJ's image creates the false perception that PEPAJ had consented or agreed to promote, advertise, market and/or endorse the Club to the benefit Defendant's commercial interests.

37. Defendant posted CHERI's image and likeness on the Club's Facebook and Instagram pages on May 5, 2018.

   a. Defendant's use was unauthorized and for a commercial purpose.
   b. CHERI is readily identifiable in the misappropriated images. No

reasonable person in Defendant's position would mistakenly believe that Plaintiff was an employee or agent of Hi Fi's or otherwise affiliated with the Club.

c. Defendant never hired or contracted with CHERI to advertise, promote, market or endorse the Club.

d. CHERI has never been employed by Defendant or contracted with Defendant to participate in events at the Club.

e. Defendant never sought permission or authority to use or alter CHERI's image, likeness or identity to advertise, promote, market or endorse the Club.

f. CHERI never gave permission, or assigned, licensed or otherwise consented to Defendant's use or alteration of her image, likeness or identity to advertise, promote, market or endorse the Club.

g. Defendant neither offered nor paid any remuneration to RUIZ for the unauthorized use or her image.

h. Defendant's use and alteration of CHERI's image creates the false perception that CHERI had consented or agreed to promote, advertise, market and/or endorse the Club to the benefit Defendant's commercial interests.

38. Defendant posted RATCHFORD'S image and likeness on the Club's Instagram page on April 29, 2018 and on the Club's Facebook page on August 5, 2018.

a. Defendant's use was unauthorized and for a commercial purpose.

b. RATCHFORD is readily identifiable in the misappropriated images. No reasonable person in Defendant's position would mistakenly believe that Plaintiff was an employee or agent of Hi Fi's or otherwise affiliated with the Club.

c. Defendant never hired or contracted with RATCHFORD to

11

advertise, promote, market or endorse the Club.

d. RATCHFORD has never been employed by Defendant or contracted with Defendant to participate in events at the Club.

e. Defendant never sought permission or authority to use or alter RATCHFORD's image, likeness or identity to advertise, promote, market or endorse the Club.

f. RATCHFORD never gave permission, or assigned, licensed or otherwise consented to Defendant's use or alteration of her image, likeness or identity to advertise, promote, market or endorse the Club.

g. Defendant neither offered nor paid any remuneration to RATCHFORD for the unauthorized use or her image.

h. Defendant's use and alteration of RATCHFORD's image creates the false perception that RATCHFORD had consented or agreed to promote, advertise, market and/or endorse the Club to the benefit Defendant's commercial interests.

## COUNT I

**Violation of Common Law Right of Publicity: Misappropriation of Likeness**

(*All Plaintiffs vs. All Defendants*)

39. Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully alleged herein.

40. Arizona recognizes a common law right of publicity whereby Plaintiffs hold the exclusive right to control the public dissemination of their name and likeness for commercial use.

41. Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of the Plaintiffs without their express consent to such use.

42. Nevertheless, in violation of Arizona law, Defendant published, printed,

displayed and/or publicly used the Plaintiffs' images, likenesses and identity on their website and social media outlets, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club, and its events and activities.

43. Each of the Plaintiff's faces and/or body are shown in each advertisement, and are clearly lighted and readily identifiable and distinguishable.

44. Plaintiffs never consented to Defendant's use of their images, likenesses or identities for any purpose.

45. Defendant misappropriated Plaintiffs' images in clandestine fashion without their knowledge and without even attempting to acquire Plaintiffs' permission.

46. The Defendant acted intentionally by selecting Plaintiffs' images and, knowing they did not have permission to use the images for commercial gain, by posting the images to Defendant's social media platforms and/or website in an effort to market the Club and its activities and events; in the alternative, and at a minimum, the Club acted with reckless indifference to Plaintiffs' legal rights by expressly permitting, allowing and condoning the posting of Plaintiffs' images on its website and/or social media platforms for the purpose of marketing and advertising the Club.

47. Defendant is in the adult entertainment business and nightclub business, and knew or should have known of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of a professional model's image and likeness for Defendant's commercial benefit.

48. Nonetheless, Defendant circumvented the appropriate licensing and negotiating process thereby avoiding payment to Plaintiffs, the cost of a photoshoot, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendant.

49. Defendant has caused and will continue to cause irreparable harm to the

1  Plaintiffs, their reputations and brands by attributing to Plaintiffs their involvement
2  with Nightclubs and Plaintiffs' association with such activities.

3  50. As a further direct and proximate result of Defendant's unauthorized use
4  of Plaintiffs' images, likenesses and/or identity without compensating the Plaintiffs,
5  Plaintiffs have been damaged in a sum equal to the actual and fair market value of
6  each misappropriated use of their likenesses.

7  51. As a further direct and proximate result of Defendant's conduct as
8  alleged herein, Defendants have earned and withheld profits attributable directly or
9  proximately to the unlawful use of Plaintiffs' images, entitling Plaintiffs to
10 disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

## COUNT II

### Violation of the Lanham Act, 15 U.S.C. § 1125(a)

*(All Plaintiffs vs. All Defendants)*

14  52. Plaintiffs hereby incorporate by reference each and every allegation set
15 forth in the foregoing paragraphs as if fully alleged herein.

16  53. Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* prohibits a party
17 in commercial advertising and promotion from "misrepresent[ing] the nature,
18 characteristics, qualities or geographic origin of his or her or another person's goods,
19 services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

20  54. Defendant used Plaintiffs' images, likenesses and/or identities as
21 described herein without authority in order to create the perception that the Plaintiffs'
22 worked at or was otherwise affiliated with the Club, endorsed the Club or the Club's
23 business activities, and/or consented to or authorized Defendant's or the Club's usage
24 of their images in order to advertise, promote, and market the Club and Defendant's
25 business activities.

26  55. Defendant's use and alteration of the Plaintiffs' images, likenesses and/or
27 identities to advertise, promote and market Defendant's business, the Club, and/or the
28 Club's events and activities as described in this Complaint was false and misleading.

56. Defendant's unauthorized use and alteration of the Plaintiff's images, likenesses and/or identities as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that the Plaintiffs worked at or were otherwise affiliated with the Club, endorsed Defendant's business, the Club or the Club's events or activities, or consented to or authorized Defendant's or the Club's usage or alteration of their images in order to advertise, promote, and market Defendant's business or the Club's events and activities and/or agreed to participate in or appear at the specific events promoted in the advertisement.

57. Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether the Plaintiffs worked at or were otherwise affiliated with the Club, endorsed Defendant's business, the Club or the Club's events or activities, or would appear in person at the Club's events and activities.

58. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether the Plaintiffs worked at or were otherwise affiliated with the Club, endorsed Defendant's business, the Club or the Club's events and activities, or consented to or authorized Defendant's or the Club's usage of her images in order to promote Defendant's business or the Club's events and activities.

59. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to visit the Club and participate in events at the Club and had a material effect and impact on the decision of patrons and prospective patrons to visit Defendant's business establishment.

60. Defendant's advertisements, promotions and marketing of the Club and events at the Club occur in and are targeted to interstate commerce. Specifically, Defendant promotes its business and events through interstate promotions and

campaigns to target persons from several different states across the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure traffic and patronage to their establishment.

61. Defendant's unauthorized use of the Plaintiffs' images, likenesses and/or identities as described herein was designed to benefit Defendant's business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

62. Defendant knew or should have known that its unauthorized use of the Plaintiffs' images, likenesses and/or identities would cause consumer confusion as described in this Complaint.

63. Defendant's unauthorized use and alteration of the Plaintiff's images, likenesses and/or identities, as described herein violates 15 U.S.C. §1125(a) and was wrongful.

64. Defendant's wrongful conduct as described herein was willful.

65. Defendant had actual or constructive knowledge of the wrongfulness of its conduct, acted with intent to deprive the Plaintiffs of their property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to the Plaintiffs.

66. The method and manner in which Defendant used the images of the Plaintiffs further evinces that Defendant was aware of and/or consciously disregarded the fact that the Plaintiffs did not consent to Defendant's use of the images to advertise Defendant's business.

67. Defendant caused and will continue to cause irreparable harm to the Plaintiffs, their reputations and brand by attributing to the Plaintiffs their involvement with Nightclubs' and Plaintiffs' association with such activities.

68. As a further direct and proximate result of Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identity without compensating the Plaintiffs,

Plaintiffs have been damaged in a sum equal to the actual and fair market value of each misappropriated use of their likenesses.

69. As a further direct and proximate result of Defendant's conduct as alleged herein, Defendant has earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

70. Defendant's conduct was purposeful and malicious in that Defendants knowingly violated Plaintiffs' rights solely to benefit their business, increase profits, and avoid paying money to legally acquire the right to commercial use of the Plaintiffs' images, and consequently, exceptional relief is warranted pursuant to 15 U.S.C. §§ 1116, and 1117(a), entitling Plaintiffs to treble damages and reasonable attorneys' fees.

## COUNT III

## False Light Invasion of Privacy

(*All Plaintiffs vs. All Defendants*)

71. Plaintiffs hereby incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully alleged herein.

72. Defendant's posting of Plaintiffs' images on its website and/or social media platforms, as alleged, created the false and misleading impression that Plaintiffs approved of and participated in some manner in the Club's business activities.

73. This impression is both misleading and false.

74. The misappropriated images were published by Defendants on the World Wide Web and/or publicly accessible and viewable social media platforms, and thus, constituted public statements.

75. The impression created about the Plaintiffs would be objectionable to a reasonable person.

76. Defendant knew its unauthorized usages of the Plaintiffs' images, likenesses and/or identity was misleading. Defendant knew that Plaintiffs never

worked at the Club, promoted the Club, or authorized the Club to use their likenesses to advance Defendant's business interests. Defendant nevertheless posted and/or authorized the posting of the images of Plaintiffs with impunity.

77. Defendant's conduct was willful, driven by the impulse to save thousands of dollars on hiring its own models and photographers and acquiring the appropriate licensing to use those models' images in their advertisements and promotions.

78. Defendants acted with reckless indifference about whether the posting of Plaintiffs' images, as alleged, would create a false and misleading impression about the Plaintiffs.

79. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered harm to their professional reputation as well as mental and emotional harm all to their damages in an amount to be proven at trial.

80. Defendant acted with malice; its conduct was purely profit driven and in reckless and callous disregard to placing Plaintiffs in a false light and giving the impression that Plaintiffs were involved in the Club and promotion of the business activities of Defendant. Accordingly, Defendant's conduct warrants the imposition of punitive damages to the fullest extent permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, against Defendant, and prays for relief and damages as follows:

1. As to all Counts, actual damages in excess of the jurisdictionally required amount of $75,000;
2. As to Count I, actual damages and disgorgement of profits attributable to Defendant's misappropriation of the Plaintiff's likeness;
3. As to Count II, actual damages and disgorgement of profits attributable to Defendant's misappropriation of the Plaintiff's likeness, as well as treble damages and reasonable attorney's fees pursuant to 15 U.S.C. §§

1116, and 1117(a);

4. As to Count III, appropriate compensatory damages for the Plaintiff's emotional and mental suffering and harm to professional reputation;

5. As to Count III, an award of appropriate punitive damages;

6. As to Counts I and II, prejudgment interest on the sum at the appropriate legal rate;

7. For costs of suit; and

8. For such other and further relief as the Court deems just.

## JURY DEMAND

WHEREFORE, each Plaintiff individually and collectively demands a jury trial on all causes and all issues so triable.

DATED this 18th day of March, 2019.

**BOUCHER LLP**

By _/s/_____

Raymond P. Boucher
Brian M. Bush
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367

**BEGAM, MARKS & TRAULSEN, P.A.**
Richard Traulsen
11201 North Tatum Blvd, Suite 110
Phoenix, Arizona 85028